**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
CHOUDRY M. HUSSAIN,                      :
on behalf of plaintiff and the           :
class members described                  :
below,                                   :
                                         :
                  Plaintiff,             :
                                         :
          vs.                            :
                                         :
SELIP & STYLIANOU, LLP;                  :
MIDLAND FUNDING LLC;                     :
and MIDLAND CREDIT                       :
MANAGEMENT, INC.,                        :
                                         :
                  Defendants.            :
-----------------------------------------------------x

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1.      Plaintiff Choudry M. Hussain brings this action to secure redress from unlawful

credit and collection practices engaged in by defendants Selip & Stylianou, LLP ("S&S"),

Midland Funding LLC ("MFLLC"), and Midland Credit Management, Inc. ("MCM").    Plaintiff

alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods,

conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in

connection with debt collection attempts. It also requires debt collectors to give debtors certain

information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.      In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the

use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive

debt collection practices contribute to the number of personal bankruptcies, to marital instability,

to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).

4.      Because of this, courts have held that "the FDCPA's legislative intent emphasizes

1

the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.      The FDCPA encourages consumers to act as "private attorneys general" to enforce

the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq.*

## VENUE AND JURISDICTION

7.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

8.      Venue and personal jurisdiction in this District are proper because:

a.      Defendants' collection communications were received by plaintiff within this District;

b.      Defendants do or transact business within this District.

## PARTIES

9.      Plaintiff Choudry M. Hussain is a resident of Brooklyn, New York.

10.     Defendant Selip & Stylianou, LLP ("S&S"), is a law firm organized as a New York limited liability partnership entity with offices at 199 Crossways Park Drive, Woodbury, Orange County, NY 11797-9004.

11.     S&S regularly collects consumer debts for others.

12.     S&S states on a website (http://www.seliplaw.com/aboutus.asp) that "Selip and Stylianou, LLP provides its clients with thorough, complete and comprehensive legal representation throughout the entire states of New York and New Jersey in the practice area of Creditor's Rights litigation and consulting."

2

13.     Defendant MFLLC is a limited liability company organized under the law of Delaware with its principal place of business at Suite 1300, 3111 Camino Del Rio North, San Diego, California, 92108.   It does business in New York.  Its registered agent and office is Corporation Service Company, 80 State Street, Albany, NY 12207.

14.     Defendant Midland Credit Management, Inc. ("MCM"), is a Kansas corporation with principal offices at 3111 Camino Del Rio North, Suite 1300, San Diego, California 92108. It does business in New York.   Its registered agent and office is Corporation Service Company, 80 State Street, Albany, NY 12207.

15.     MFLLC and MCM  are wholly-owned subsidiaries of Encore Capital  and share common management with Encore Capital.

16.     MFLLC and MCM operate in concert with one another, to purchase and collect consumer debt on a massive scale.

17.     Encore Capital and its subsidiaries are one of the largest debt buyers and collectors in the United States. From 2009 to 2015, Encore's estimated gross collections totaled over $5 billion, with net income of more than $384 million.

18.     Defendants MCM and MFLLC send collection letters by United States mail, call consumers from call centers in the United States, India, and Costa Rica, furnish consumer information to credit bureaus, and sue consumers in state courts across the country. The vast majority of the debt collection lawsuits defendants file go unanswered by the consumers and result in default judgments.

19.     Defendants MCM and MFLLC  purchase or claim to purchase portfolios of old consumer debt from some of the nation's largest consumer finance and telecommunications companies, and from other debt buyers, for pennies on the dollar. These debts primarily consist of charged-off consumer credit card and telecommunications debts, obtained at various points in time after default. Encore states in SEC filings that from 2009 to 2015 it paid about $4 billion for approximately 60 million consumer accounts with a total face value of $128 billion.

3

20.    MCM directs the collection of the debts, including through litigation.

21.    MFLLC regularly files thousands of collection lawsuits on debts incurred for personal, family or household purposes.  Between Nov. 6, 2017 and Dec. 1, 2017, a period of less than a month, MFLLC filed 1,000 collection cases in Cook County, Illinois alone.  This is typical of the volume of cases it files in various jurisdictions.    Each complaint was forwarded by MCM and had attached to it an affidavit executed by an MCM employee so that if necessary MFLLC could obtain a default judgment without delay.

22.    MFLLC is the entity which claims to hold title to the debts.

23.    MCM duns consumers and prepares documents for the MFLLC  lawsuits.

24.    The principal or sole business of each defendant  is the collection of defaulted consumer debt.

25.    A majority of the U.S. collection income of MFLLC and MCM comes from "legal collections." (Annual report of Encore Capital on SEC Form 10-K for year ending December 31, 2015, original page 39)

26.    Each defendant uses the mails and telephone system in connection with the collection of debts.

27.    Each defendant is a "debt collector" as defined in the FDCPA,  15 U.S.C. §1692a(6).

### FACTS

28.    On or about August 18, 2017, defendant S&S, acting as authorized agent of MCM and MFLLC, sent plaintiff the collection letter attached as Exhibit A.

29.    Exhibit A is a form letter, filled in by computer.

30.    Exhibit A sought to collect a credit card debt incurred for personal, family or household purposes and not for business purposes.

31.    Exhibit A lists, "Total amount of payments made on the debt since charge-off: $1.25."

4

32.     In fact, neither plaintiff nor anyone acting with his authority had made any payments on the debt since charge-off.

33.     Creating a false record that payments have been made on a debt by a consumer subsequent to charge-off is highly detrimental to the consumer, in that the statute of limitations generally runs from the last payment. *Peoples Trust Co. of Malone v. O'Neil*, 273 N.Y. 312, 315, 7 N.E.2d 244 (1937).

34.     Unsophisticated consumers are not familiar with the operation of the statute of limitations and may not understand why such records are harmful.

35.     The creation of false records of payment has long been noted by courts as a means of evading the statute of limitations. *Young v. Perkins,* 29 Minn. 173, 176, 12 N.W. 515 (1882) ("The holder of a note, or any person interested in it, can manufacture false evidence of partial payment as well after as before the statute of limitations has in fact run against the note, and in this way he can make out a case for himself, to which the maker or his representatives must yield unless he or they can overcome it by opposing evidence."); *First Nat'l Bank v. Carstens*, 346 Ill. App. 474, 105 N.E.2d 786, 788-9 (4th Dist. 1952) ("Nothing contained in this opinion should be interpreted so as to imply that the simple notations of interest payment on the note made by the holder, without showing that the notation was made at such time as to be against the interest of the party making the notation, or without corroboration by other evidence, could operate to avoid the Statute of Limitations."); *Atchison, T. & S. F. Ry. Co. v. Atchison Grain Co.*, 70 P. 933, 937 (Kan. 1902), later opinion, 68 Kan. 585, 75 P. 1051 (1904) ("It is not within the power of a creditor to prevent the statute of limitations from running on his claim by the arbitrary indorsement of a credit of which the defendant has no knowledge, or at least to which he has not in some manner given his assent").

## COUNT I – FDCPA

36.     Plaintiff incorporates paragraphs 1-35.

37.     Defendants violated 15 U.S.C. §1692e, 1692e(2), and 1692e(10), by creating a

record of the making of payments that the consumer has not in fact made.

## CLASS ALLEGATIONS

38.    Plaintiff brings this claim on behalf of two classes, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

39.    The S&S class consists of (a) all individuals with addresses in New York (b) with respect to whom defendant S&S sent a letter (c) listing a positive amount of payments made on the debt since charge-off (d) where S&S does not have documentation showing such a payment was made by or on behalf of the individual (e) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

40.    The Midland class consists of (a) all individuals with addresses in New York (b) to whom a letter was sent (c) seeking to collect a debt owed to MFLLC (d) which letter listed a positive amount of payments made on the debt since charge-off (e) where MFLLC and MCM and their agents do not have documentation showing such a payment was made by or on behalf of the individual (f) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

41.    On information and belief, each class is so numerous that joinder of all members is not practicable.

42.    There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are:

> a.    Whether defendants engage in a practice of showing post-charge-off payments without documentation that such payments have in fact been made by or on behalf of an individual;
>
> b.    Whether such a  practice violates the FDCPA.

43.    Plaintiff's claim is typical of the claims of the class members.  All are

based on the same factual and legal theories.

44.    Plaintiff will fairly and adequately represent the class members.  Plaintiff

has retained counsel experienced in class actions and FDCPA litigation.

45.    A class action is superior for the fair and efficient adjudication of this

matter, in that:

        a.    Individual actions are not economically feasible.

        b.    Members of the class are likely to be unaware of their rights;

        c.    Congress intended class actions to be the principal enforcement

            mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and

against defendants for:

        i.    Statutory damages;

        ii.    Attorney's fees, litigation expenses and costs of suit;

        iii.    Such other and further relief as the Court deems proper.


                    /s/Tiffany N. Hardy
                    Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com


Dan Shaked
SHAKED LAW GROUP, P.C.
44 Court Street, Suite 1217
Brooklyn, New York 11201
(917) 373-9128

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

<u>/s/Tiffany N. Hardy</u>
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

8